# United States District Court
# District of Minnesota

| | |
|---|---|
| Ellen M. Gorton,<br><br>          Plaintiff,<br><br>v.<br><br>Debt Equities, LLC,<br>Thomas LaBeaux, and<br>Paul Skillings,<br><br>          Defendants. | Court file no. 08-cv-04817 (MJD/JJK)<br><br>**Memorandum in Support<br>of Plaintiff's Motion for<br>Attorney Fees and Costs** |

## Introduction

Since the parties have been unable to agree on the appopriate measure of attorney fees and costs, Plaintiff Ellen Gorton seeks a determination from this Court pursuant to the Rule 68 Offer of Judgment and this Court's Order of April 30, 2009.

## Statement of Facts

Gorton filed her complaint on August 1, 2009, alleging violations of the Fair Debt Collection Practices Act, wrongful garnishment, unauthorized practice of law, malicious prosecution, and conversion. (Compl. ¶¶ 55-75 (Doc. 1).) She requested statutory damages of $1,000 under the FDCPA and $100 under Minn. Stat. § 571.90; actual damages under the FDCPA, Minn. Stat. § 571.90, and for malicious prosecution and conversion; attorney fees and costs under the FDCPA, Minn. Stat. §§ 8.31, 481.02 , and 571.90; and injunctive relief under Minn. Stat. § 481.02. (Compl. 11-12.) Due to the unique facts and unusual claims in this

lawsuit, counsel for Gorton carefully drafted, reviewed, and revised the Complaint. (Barry Decl. ¶ 8; Glover Decl. ¶ 7.)

Defendants answered jointly, vigorously denying liability and most of the allegations in the Complaint. (*See generally*, Ans. (Doc. 2).) One month after answering, Defendants served a Rule 68 Offer of Judgment for $7,500 plus reasonable attorney fees and costs. At the Rule 16 conference, the parties agreed to an early settlement conference with Magistrate Judge Keyes. (*See* Order of November 17, 2009 (Doc. 8).) The parties engaged in settlement discussions leading up to the settlement conference, but were unable to settle the case at that time. (*See* Min. Entry of January 29, 2009 (Doc. 10).)

After the case did not settle, both parties served deposition notices, and Gorton served deposition notices and discovery requests, including a notice of a Rule 34 site inspection. (Barry Decl. ¶ 8; Glover Decl. ¶ 7.) Before the scheduled date of depositions, Defendants served a second Rule 68 Offer of Judgment for double the amount of the first—$15,000—plus reasonable attorney fees and costs. (Accept. R. 68 Offer, Ex. A (Doc. 11-2).) Gorton decided to accept this offer, and did s oon April 15, 2009. (Accept. R. 68 Offer (Doc. 11).) Shortly thereafter, Gorton notified this Court and counsel of her intent to claim attorney fees and costs pursuant to 15 U.S.C. § 1692k(a). (Not. of Intent to Claim Atty Fees (Doc. 12).)

The parties have not been able to agree on an amount of attorney fees and costs.

## Argument

**I. Gorton is entitled to an award of attorney feest and costs pursuant to Defendants' Rule 68 offer, the Fair Debt Collection Practices Act, Minn. Stat. § 8.31, and Minn. Stat. § 571.90.**

Attorney fees and costs in this case are required by the claims on which Gorton prevailed as well as Defendants' Rule 68 offer itself. The fee-shifting provision of the FDCPA states:

> (a) Except as otherwise provided by this section, any debt collector who fails to comply with any provision of this subchapter with respect to any person is liable to such person in an amount equal to the sum of—
>
> . . .
>
>   (3) in the case of any successful action to enforce the foregoing liability, the costs of the action, together with a reasonable attorney's fee as determined by the court.

15 U.S.C. § 1692k(a). Attorney fees and costs are therefore mandatory under the FDCPA, not special or discretionary. *See Graziano v. Harrison*, 950 F.2d 107, 113 (3rd Cir. 1991) (finding "the Act mandates an award of attorney fees"). The mandatory attorney fee provision plays an integral part in the FDCPA, and enables debtors to act as private attorneys general and enforce the act against debt collectors. *See Zagorski v. Midwest Billing Svcs, Inc.*, 128 F.3d 1164, 1167 (7th Cir. 1997); *see also Armstrong v. Rose Law Firm, P.A.*, civ. no. 00-2287, 2002 WL 31050583 *1 (D. Minn. 2002) (*citing Graziano*, 950 F2d at 113).

Similarly, attorney fees and costs are mandatory under Minnesota's wrongful garnishment statute:

> A creditor who serves or causes to be served a garnishment summons before entry of judgment in the main action, except when garnishment before entry of judgment is permitted under this chapter, is liable to the debtor named in the garnishment proceedings in the amount of $100, plus actual damages, plus reasonable attorney's fees and costs.

Minn. Stat. § 571.90. Attorney fees and costs are also mandatory under Minnesota's unauthorized practice of law statute, a violation of which includes the penalties and remedies in Minn. Stat. § 8.31:

> [A]ny person injured by a violation of any of the laws referred to in subdivision 1 may bring a civil action and recover damages, together with costs and disbursements, including costs of investigation and reasonable attorney's fees . . . .

Defendants' Rule 68 Offer of Judgment included the following language regarding attorney fees:

> The judgment entered shall include an additional amount for Plaintiff's reasonable attorney fees and costs incurred by Plaintiff in connection with the claims alleged in the Complaint in this matter.

(Accept. R. 68 Offer, Ex. A (Doc. 11-2) ¶ 2.)

## II. As the prevailing party, Gorton is entitled to full attorney fees, since her attorneys' time was reasonably expended and their hourly rates are reasonable.

Courts use the lodestar method to determine a proper award of attorney fees to a prevailing party. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *see Armstrong*, *supra* (applying the lodestar method in an FDCPA action). The

lodestar method requires a court to multiply the number of hours reasonably expended by a reasonable hourly rate. *Id.*

In calculating the number of hours reasonably expended, a court should consider (1) the plaintiff's overall success; (2) the necessity and usefulness of the plaintiff's activity in the particular matter for which fees are requested; and (3) the efficiency with which the plaintiff's attorneys conducted that activity. *Jenkins v. Missouri*, 172 F.3d 709, 718 (8th Cir. 1997).

In calculating the appropriate hourly rate, courts may consider (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Hensley*, 461 U.S. At 430, n. 3. The most important factor is the plaintiff's degree of success. *Id.* at 436; *Zagorski*, 128 F.3d at 116; *Tolentino v. Friedman*, 46 F.3d 645, 652 (7th Cir. 1995).

A plaintiff is a prevailing party for the purposes of attorney fees if he "succeed[s] on any significant issue in litigation which achieves some of the benefit sought in bringing suit." *Hensley*, 461 U.S. at 424. If the plaintiff obtains

excellent results, the plaintiff's attorney should recover a fee that fully compensates him or her. *Id.* at 435. In an FDCPA lawsuit, unlike in other tort lawsuits, the plaintiff is vindicating important rights that go beyond mere monetary value. *Tolentino*, 477 U.S. at 651-52 (*quoting City of Riverside v. Rivera*, 477 U.S. 561 (1986)); *see also, e.g., Wal-Mart Stores, Inc., v. Barton*, 223 F.3d 770, 773 (8th Cir. 2000) (finding "damages awards do not reflect fully the public benefit advanced . . .").

In this case, Gorton accepted an offer of judgment of $15,000 to resolve her claims under the FDCPA and Minnesota statutes. This was a complete victory and an excellent result.

### a. Plaintiff's counsel expended a reasonable number of hours in this case.

This Court must first determine whether the time Gorton's counsel spent on this case was reasonable given the results obtained and the difficulty of obtaining those results. Ultimately, the determination of the reasonable number of hours expended rests in the sound discretion of the trial court, which must provide a clear, concise explanation of its reasons for the number at which it arrives. *Hensley*, 461, U.S. at 437.

Gorton obtained a complete victory. The Rule 68 offer compensates her for the statutory award of up to $1,000 under the FDCPA, 15 U.S.C. § 1692k(a)(2)(A), and the statutory award of $100 under Minnesota's wrongful garnishment statute, Minn. Stat. § 571.90. The offer exceeded those amounts by $13,900, and

left a determination of attorney fees and costs up to the Court. This was an excellent result, justifying the time Gorton's attorneys spent preparing the Complaint and working towards settlement with counsel for Defendants.

### b. Plaintiff's counsel's hourly rates are reasonable.

Next, this Court must determine whether the hourly rate charged by Gorton's counsel is reasonable. In doing so, a court should consider the prevailing market rate for similar services in the community for work performed by "lawyers of reasonably comparable skill, experience, and reputation." *McDonald v. Armontrout*, 860 F.2d 1458-59 (8th Cir. 1998).

Here, Plaintiff was represented by two experienced and highly reputable lawyers. Peter Barry is an experienced consumer rights lawyer with extensive experience in FDCPA litigation. In this case, he actively participated in all aspects of litigation, from initial meetings with Gorton through today.

Barry's rates have increased over the years in accordance with his knowledge and experience. In 2004 and 2005, federal courts approved a fee of $300 per hour, and in 2007, Barry raised his rate to $400, before raising it to his current hourly rate of $425.

Sam Glover is a solo practitioner and consumer rights lawyer with ample experience representing consumers in state and federal court in Minnesota. Glover's litigation experience includes a successful jury trial in Minnesota state court in which he recovered $50,000 for his clients in a landlord-tenant matter,

and ongoing complex FDCPA litigation in federal court in Minnesota. Although he has never received a fee award, Glover regularly bills his clients $250 per hour when working on retainer. When working on contingency in FDCPA and other consumer cases, Glover's rate is $295, which includes the assumption of risk in such cases.

Under the Laffey Matrix,[1] a "well-established objective source for rates that vary by experience," Barry and Glover have hourly rates that are reasonable and within the appropriate range based on their years in practice. *In re HPL Techs., Inc., Securities Litigation*, 366 F. Supp. 2d 912, 921 (N.D. Cal. 2005). While the Laffey Matrix is an index based on the prevailing rates in Washington, D.C., it has been cited and used in determining reasonable hourly rates by the Ninth and Seventh Circuit courts by comparing locality pay differentials in Washington, D.C., federal courts with those in other cities. *See Selph v. Bruno-Cusamano-Montesi-Tataglia-Palmina-Capone & Assoc., LLC*, 2007 WL 433103 *12-13 (N.D. Ill. 2007) (using the Laffey Matrix and adjusting rates upward for Chicago); *In re HPL Techs., supra* (using the Laffey Matrix and adjusting rates upward for the San Francisco Bay area).

The locality pay in Minneapolis-St. Paul (19.43%) is similar to that in Washington, D.C. (20.89%). However, the pay differential in Minneapolis-St. Paul is lower than in Washington, D.C., and according to the formula used by the

---

1  The Laffey Matrix as calculated by the U.S. Attorney's Office for the District of Columbia can be found at:
   http://www.usdoj.gov/usao/dc/Divisions/Civil_Division/Laffey_Matrix_7.html.

Seventh and Ninth Circuit courts of appeal, requires a downward adjustment of about 1.2%. Thus, the appropriate rate for Barry (13 years' experience) would be $405, and the appropriate rate for Glover (6 years' experience) would be $267.

In light of Barry and Glover's experience, competence, knowledge, and the prevailing market rate for legal services, this Court should accept their normal and current hourly rates of $425 for Barry and $295 for Glover as reasonable for purposes of calculating the lodestar. *See Hixon v. City of Golden Valley, et al.*, civ. no. 06-1548, Kyle, J. (D. Minn. 2007) (finding a rate of $4000 per hour reasonable and consistent with prevailing market rates in a § 1988 case); *stella v. Jeffrey Anderson, Pete Kohman, et al.*, civ. no. 06-3564, Noel, J. (D. Minn. 2007) (finding hourly rate of $350 reasonable in a Truth in Lending Act case); *Peterson v. Ford Motor Co.*, 2006 WL 3030885 (D. Minn. 2006) (approving hourly rates of $350 and $265 in MHRA case).

### c. Proportionality is not a factor to be considered.

Plaintiff anticipates that Defendant may erroneously argue that the size of Plaintiff's recovery should be considered in determining a reasonable attorney fee award. This should not be a factor at all, since the amount of attorney fees need not be proportionate to the amount of damages recovered. *Loggins v. Delo*, 999 F.2d 364, 368 (8th Cir. 1993) (acknowledging that "proportionality between the amount of damages and fee awards was not required"). To the contrary, a court may abuse its discretion by applying proportionality to an attorney fee award. *Jordan v. Transnational Motors*, Inc., 537 N.W.2d 471 (Mich. Ct. App. 1995).

The U.S. Supreme Court has previously considered the question of proportionality in attorney fee awards and rejected the proposition that "fee awards under section [42 U.S.C.] 1988 should necessarily be proportionate to the amount of damages a civil rights plaintiff actually recover." *City of Riverside v. Rivera*, 477 U.S. 561, 574 (1986). The Supreme Court went on to reason that:

> A rule of proportionality would make it difficult, if not impossible, for individuals with meritorious civil rights claims but relatively small potential damages to obtain redress from the courts. This is totally inconsistent with Congress' purpose in enacting section 1988.

*Id*. Similarly, in the context of the Fair Credit Reporting Act (FCRA), the Fourth Circuit held:

> Since there will rarely be extensive damages in an FCRA action, requiring that attorney's fees be proportionate to the amount recovered would discourage vigorous enforcement of the Act.

*Yohay v. City of Alexandria Employees Credit Union, Inc.*, 827 F.2d 967, 974 (4th Cir. 1987). More importantly, in *Armstrong*, a Minnesota FDCPA case, the court rejected a defendant's proportionality argument, and awarded the plaintiff more than $40,000 in attorney fees and costs. *Armstrong v. Rose Law Firm, P.A.*, *supra*. In that case, the defendant contended that awarding the plaintiff such an amount would create a windfall since the Plaintiff's damages totaled only $1,000. However, the court found that the plaintiff did not choose to create the disparity, and although the defendant had a right to aggressively to defend the case, doing so caused a large amount of litigation, and greatly increased the number of hours the plaintiff's attorney had to expend. *Id.*

The opinion in *Jordan* best explains the vital role attorneys' fees play in consumer protection cases, and the irrelevance of proportionality:

> Simply put, if attorney fee awards in these cases do not provide a reasonable return, it will be economically impossible for attorneys to represent their clients. Thus, practically speaking, the door to the courtroom will be closed to all but those with either potentially substantial damages, or those with sufficient economic resources to afford the litigation expenses involved. Such a situation would indeed be ironic: it is but precisely those with ordinary consumer complaints and those who cannot afford their attorney fees for whom these remedial acts are intended.

*Jordan,* 537 N.W.2d at 474.

Accordingly, this Court should not consider proportionality, but rather the intent of Congress in creating the fee shifting provision of the FDCPA and the goals sought to be achieved in regards to consumer protection. By pursuing its defense like the defendant in *Armstrong*, Defendants, not Gorton, created any disparity between the judgment amount, and the fees and costs actually incurred. Since Gorton prevailed on her claims, and the lodestar is an accurate representation of hours expended in his case, this Court should award the full amount of attorney fees.

## Conclusion

Gorton requests a total award of $20,602 in attorney fees, and $1,102.80 in costs. This total includes fees and costs up to the date Gorton's counsel received Defendants' Rule 68 offer of judgment, but this total does not include fees and

costs incurred in preparing this motion. Gorton therefore respectfully requests a total award of $21,704.80 for her attorneys' reasonable fees and costs.

**Samuel J. Glover & Associates, LLC**

Date: <u>May 26, 2009</u>    <u>*s/Samuel J. Glover*</u>
Samuel J. Glover (#327852)
2021 East Hennepin Avenue, Suite 195
Minneapolis, MN 55413
 phone • 612.424.3770
 fax • 612.605.1947
 email • samglover@consumerlawyer.mn

Peter F. Barry (#0266577)
2021 East Hennepin Avenue, Suite 195
Minneapolis, MN 55413
 phone • 612.379.8800
 fax • 612.379.8810
 email • pbarry@lawpoint.com

*Attorneys for Plaintiff*