UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Ellen M. Gorton, | Civ. No. 08-4817 (MJD/JJK) |
| Plaintiff, | |
| v. | **ORDER AND MEMORANDUM** |
| Debt Equities, LLC, Thomas LaBeaux, and Paul Skillings, | |
| Defendants. | |

**IT IS HEREBY ORDERED** that Plaintiff's Motion for Attorney Fees and Costs (Doc. No. 14), is **GRANTED IN PART** and **DENIED IN PART**, and Plaintiff is awarded attorneys' fees and costs in the amount of $16,700.42, as described more particularly in the attached Memorandum.

Date: July 13, 2009

*s/ Jeffrey J. Keyes*
JEFFREY J. KEYES
United States Magistrate Judge

**MEMORANDUM**

I. **BACKGROUND**

Plaintiff filed her complaint on August 1, 2008, alleging violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et seq.*, wrongful garnishment, unauthorized practice of law, malicious prosecution, and conversion. (Doc. No. 1 ¶¶ 55-75.)

Plaintiff contended: (1) that the Defendant debt collectors obtained, without notice to her, a default judgment against her on a $1,429.80 debt she owed to Goodyear for tire purchases; (2) that they obtained, again without notice to her, an order to show cause from Hennepin County District Court directing her to appear in court; (3) that they caused a bench warrant to be issued for her arrest; and (4) that they then caused her false arrest at her workplace as she was taken to jail, held for two hours and posted bail, which the Defendants collected as payment for the fraudulently obtained judgment. (*See generally* Doc. No. 1.) She requested statutory damages of $1,000 under the FDCPA and $100 under Minn. Stat. § 571.90; actual damages under the FDCPA, Minn. Stat. § 571.90, and for malicious prosecution and conversion; attorneys' fees and costs under the FDCPA, Minn. Stat. §§ 8.31, 481.02, and 571.90; and injunctive relief under Minn. Stat. § 481.02 (*Id.*).

Defendants answered jointly, denying liability and most of the allegations in

the Complaint.  (Doc. No. 2.)  One month after answering, Defendants served a Rule 68 Offer of Judgment for $7,500 plus reasonable attorneys' fees and costs.  At the Rule 16 conference, the parties agreed to an early settlement conference with this Court.  (Doc. No. 8.)  The parties engaged in a settlement conference, but were unable to settle the case at that time.  (Doc. No. 10.)

After the case did not settle, both parties served deposition notices, and Plaintiff also served discovery requests, including a notice of a Rule 34 site inspection.  (Doc. No. 16, Decl. of Peter F. Barry, Esq. in Supp. of Pl.'s Application for an Award of Att'ys' Fees and Reimbursement Expenses ("Barry Decl.") ¶ 8; Doc. No. 17, Decl. of Sam Glover in Supp. of Pl.'s Mot. for Att'y Fees and Costs ("Glover Decl.") ¶ 7.)  Before the scheduled date of depositions, Defendants served a second Rule 68 Offer of Judgment for double the amount of the first—$15,000—plus reasonable attorney fees and costs.  (Doc. No. 11, Attach. 1.)  Plaintiff accepted this offer on April 15, 2009.  (Doc No. 11.)  Shortly thereafter, Plaintiff notified this court and counsel of her intent to claim attorneys' fees and costs pursuant to 15 U.S.C. § 1692k(a).  (Doc. No. 12.)

Plaintiff requests a total award of $20,602 in attorneys' fees, and $1,102.80 in costs.[1]  Defendants oppose this request and argue that  Plaintiff should be

---

[1]  Plaintiff's attorneys did not help themselves by starting their Memorandum by with the following bit of self-promotion: "Due to the unique facts and unusual claims in this lawsuit, counsel for Gorton carefully drafted, reviewed, and revised
(Footnote Continued on Following Page)

awarded only $9,340 in attorneys' fees and $352.70 in costs.

## II.     LEGAL STANDARD

The FDCPA provides for an award to a successful litigant of "the costs of the action, together with a reasonable attorney's fee as determined by the court." 15 U.S.C. § 1692k(a)(3).  The lodestar method has been established as the "most useful starting point for determining the amount of a reasonable fee," and requires a court to calculate "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).  The reasonableness of a fee depends upon a number of factors, including "the plaintiff's overall success; the necessity and usefulness of the plaintiff's activity in the particular matter for which fees are requested; and the efficiency with which the plaintiff's attorneys conducted that activity." *Jenkins v. Mo.*, 127 F.3d 709, 718 (8th Cir. 1997).  Courts also consider the prevailing market rate for similar services in the community where the litigation takes place when performed by a "lawyer of reasonably comparable skill, experience, and reputation." *McDonald v. Armentrout*, 860 F.2d 1456, 1458-59 (8th Cir. 1988). The fee applicant bears the burden to produce evidence to support the rates

---

(Footnote Continued from Previous Page)
the Complaint."  (Doc. No. 19 at 1-2.)  This Court expects that attorneys admitted to this Court will always make a careful—indeed painstaking—review of their submissions and will not treat careful preparation as an extraordinary event.

charged and hours worked. *Hensley*, 461 U.S. at 433; *see also Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984) (noting that "the burden is on the fee applicant to produce satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation").

## III.  HOURLY RATES

Plaintiff's lead attorney, Peter F. Barry, seeks a rate of $425 an hour for his work on this case. However, he submits no credible support to show that this is the prevailing rate for such work in this community. He simply asserts that "[his] current hourly rate is $425 [and that] [t]his rate is reasonable, and it is the rate [he] currently charge[s] consumer law clients including hourly clients." (Barry Decl. ¶ 13.) But he submits no detail to show how many hours he has actually charged to "hourly clients" at this rate or, more importantly, the volume of actual payment at this rate.[2] He has submitted no affidavits or other support from other lawyers in the community who have comparable levels of skill and experience verifying that $425 is the prevailing rate. The only fairly recent specific information about an hourly rate for his own time in FDCPA litigation that he

---

[2] Mr. Barry submits one fee agreement with an undisclosed client which recites an hourly rate of $425 per hour. He provides no further information about how many hours he charged out and collected at this rate, or whether he entered into other agreements at lower rates with other clients.

provides is his averment that in 2005 the Eastern District of Pennsylvania approved a lodestar attorney fee rate of $300 per hour in an FDCPA consumer law case he handled in Pennsylvania.

He also provides the Court with a survey conducted by a lawyer in Dayton, Ohio, which purports to determine, amongst other things, the average hourly billing rates of attorneys practicing in the field of consumer law throughout the United States.  (Barry Decl. ¶ 16, Ex. 3.)  This survey indicates that in 2007 in the Midwest region of the country the average hourly rate of consumer law attorneys with 11 to 15 years of experience, like Mr. Barry, was $394.  (*Id.*)  However, the Court finds that, at least as presented, this survey is of no value.  There is a complete lack of any foundation for the scientific validity of the survey, no attempt to show the methodology utilized, and no attempt to show any statistical significance of the samples obtained.  There is not even any proof that any attorneys from Minnesota were surveyed at all.  The Court gives it no weight.[3]

---

[3]   Plaintiff's counsel also suggest that the Court should use the Laffey Matrix technique for calculating the hourly rates.  The Laffey Matrix is an index based on the prevailing rates in Washington, DC, which is adjusted for locality pay.  The Laffey Matrix method has been discredited in this district and this Court will not utilize it.  *See Bankey v. Phillips & Burns, LLC*, Civil No. 07-2200 (DWF/RLE), 2008 WL 2405773, at *2 n.1 (D. Minn. June 11, 2009) ("Courts in this district have recently indicated that they found the Laffey Matrix unpersuasive in determining reasonable hourly rates for attorneys pursuing FDCPA cases in Minnesota, and this Court agrees."); *see also Young v. Diversified Consultants, Inc.*, 554 F. Supp. 2d 954, 956 (D. Minn. 2008); *Olson v. Messerli & Kramer,*

(Footnote Continued on Following Page)

It is of much greater significance to the Court that three judges in this district have recently dealt with this very issue of the reasonableness of the hourly rate for an experienced consumer-law attorney who is entitled to a fee award in an FDCPA case.  For example, Mr. Tommy Lyons, Sr., was awarded $325 per hour in cases where he had the role of lead counsel and Mr. Tommy Lyons, Jr., was awarded $300 per hour.  Like Mr. Barry, Messrs. Lyons, Sr., and Lyons, Jr., are leading attorneys in the field of consumer-protection law with a national practice and are frequent applicants for attorneys' fees awards to the courts as a result of their success in pursuing FDCPA relief for their clients.  Indeed, Mr. Lyons, Jr., has a very comparable level of experience to Mr. Barry, with Mr. Lyons, Jr., having been admitted to practice in 1994 and Mr. Barry in 1996.  Mr. Barry, like Mr. Lyons, Sr., had the role of lead counsel.  Judges Davis, Schiltz, and Frank each decided that $325 per hour for Mr. Lyons, Sr., and $300 per hour for Mr. Lyons, Jr., was a reasonable and proper hourly rate to utilize in making fee awards.  *See Young*, 554 F. Supp. 2d. at 956 (Davis, J.); *Bankey*, 2008 WL 2405773, at *2 (Frank, J.);  *Olson*, 2008 WL 1699605, at *2 (Schiltz, J.).[4]

---

(Footnote Continued from Previous Page)
*P.A.*, No. 07-CV-0439 (PJS/RLE), 2008 WL 1699605, at *2 (D. Minn. Apr. 9, 2008).

[4]   Mr. Barry submits an Order from the U.S. District Court for the District of
(Footnote Continued on Following Page)

7

It would have been helpful to this Court in making this assessment about hourly rates if Defendants' counsel had disclosed their own hourly rates charged to the (presumably) paying client in this case. Although defense counsel trumpeted the $300 rate awarded to Mr. Lyons, Jr., in *Young*, *Bankey*, and *Olson*, they were silent about their own rates charged here, although they did see fit to criticize the Plaintiff's attorneys for spending more time on the case than they did. The Court infers that the reason for this silence about Defendants' lead attorney's own hourly rates is that it is higher than $300 per hour or else this rate would have been offered as proof that the prevailing rate for the type of work involved in this case is at or below $300 per hour.

It should also be noted that it is not at all clear that the prevailing-rate issue should be limited to the question of what rates are being utilized by attorneys practicing in the "area of consumer protection law." Here, the skills which had to be brought to bear are those of an attorney experienced in civil litigation with a particular focus on the FDCPA and its intricacies in federal court. To succeed in federal-court litigation an attorney must have particular, specialized knowledge of federal-court practice and procedure, and this type of experience is not common

---

(Footnote Continued from Previous Page)
Arizona on April 21, 2009, awarding Mr. Lyons, Jr., an hourly rate of $400 per hour in an FDCPA case in Arizona. This tells us nothing about prevailing rates in Minnesota.

in the bar. Whether the matter involves, for example, the FDCPA, ERISA, Title VII, or CERCLA, the attorney in federal court must, first and foremost, bring federal court litigation experience to the case, in addition to her experience with particular statutes and common law claims, in order to best serve the client. This is a moot point in this case, however, because Plaintiff's counsel did not submit any evidence of the prevailing rates of experienced federal-court litigators in this District.

Taking all of this information into account, the Court concludes that the hourly rate which should be utilized for Mr. Barry's fee application is $350 per hour. *Warnock v. Archer*, 397 F.3d 1024, 1027 (8th Cir. 2005) (stating that "when fixing hourly rates, courts may draw on their own experience and knowledge of prevailing market rates").

Mr. Samuel Glover of the firm Samuel Glover & Associates, LLC, was associated with Mr. Barry on this case, and he asks the Court to use an hourly rate of $295 for his time. Although Mr. Glover is obviously a skilled practitioner in the field of consumer law and has developed an excellent reputation in his field in the six years since he was admitted to the bar, he played what is often described as a "second-chair" role in this case. He has not submitted any support for his claim that $295 per hour is the prevailing rate in this legal community for such work. The Defendants suggest that $200 per hour is an appropriate rate for Mr. Glover's time, but they do not disclose the hourly rate for their own second chair,

Mr. Brett Clark of the law firm Lommen, Abdo, Cole, King &Stageberg, PA. The Court concludes that an hourly rate of $235 per hour would be appropriate for Mr. Glover for his work on this case.

### III.   HOURS EXPENDED

The Court has reviewed the time records of Mr. Barry and Mr. Glover and finds that, generally speaking, there does not appear to be any excessive time spent on any individual tasks in the case. However, it appears to the Court that there was at least some duplication of effort by these two experienced attorneys in handling this matter. The expertise of Messrs. Barry and Glover in handling FDCPA and consumer-protection-law matters of this sort should have allowed them to efficiently and effectively litigate this case without such duplication of effort, thus reducing the amount of time expended. But the affidavit of defense counsel Brett Clark states that the Lommen, Abdo firm incurred a total of 29.6 attorney hours and 2.9 paralegal hours defending the case (Doc. No. 21, Aff. of Brett P. Clark ("Clark Aff.") ¶ 4), while Mr. Barry spent 31.4 hours and Mr. Glover 24.6 hours on the case. (Barry Decl. ¶ 20; Glover Decl. ¶ 17.) Although the Plaintiff's attorneys are not confined to the number of hours opposing counsel incurred in this matter, the disparity is great enough to convince this Court that there should be a reduction in the number of Plaintiff's attorneys' hours utilized in the lodestar calculation. This will be tempered by the fact that Plaintiff has not

applied for an attorneys' fees award for the amount of time involved in the fee application which required the preparation of a memorandum of law and affidavits of Messrs. Barry and Glover.  The Court will reduce the number of hours for Mr. Glover by 20% to account for the apparent duplication of effort by Plaintiff's counsel, thus using 31.4 hours for Mr. Barry and 19.68 hours for Mr. Glover.

**IV.   COSTS**

Plaintiff seeks $814.81 in Mr. Glover's firm's itemized costs.  (Glover Decl. ¶ 19.)  Defendants object to several of these items.  First, Defendants point out that the Plaintiff is seeking costs which were incurred during the time period from February 11, 2008, to June 2, 2008, well before this case was commenced in July 2008.  It appears, as Defendants suggest, that the pre-July 2008 costs were incurred by Plaintiff in getting the judgment vacated in Hennepin County.  The Defendants argue that these pre-July 2008 costs should not be awarded because they were not incurred in prosecuting this particular case.  However, the Defendants' Rule 68 Offer of Judgment said: "The judgment entered shall include an additional amount for Plaintiff's reasonable attorney fees and costs incurred by Plaintiff *in connection with the claims* alleged in the Complaint in this matter." (Doc. No. 11, Attach. 1 ¶ 2 (emphasis added).)  Thus, the costs are not strictly limited to those incurred in this action after the date of filing.  Defendants drafted the Offer of Judgment and a plain reading of the language is that it covers a

broader swath of costs than those traditionally awarded.  The costs incurred in getting the judgment vacated in Hennepin County were incurred "in connection with the claims alleged in the Complaint" and are recoverable.

Defendants also object to $319.50 in costs incurred by Mr. Glover's firm on September 23, 2008, for payment to "CSI Legal Process, Inc." because there is no further detail provided by Mr. Glover, and Defendants are aware of no process served in September 2008 in this case.  The Court will allow this expense because it assumes that this bill was for services rendered earlier in the case, perhaps in connection with initial service of pleadings, and that Mr. Glover has accurately set forth these costs.  The Court accepts Mr. Glover's representation, as an officer of the court, that this itemized expense was incurred in this case.  The Court will disallow two expenses on Mr. Glover's list, one for $12.63 and the other for $4.55 because he provided no itemization at all for these expenses.  The total costs awarded for Mr. Glover's firm's expenditures are $797.63.

Mr. Barry has submitted a separate bill of costs in the total amount of $287.99.  Defendants object to the inclusion of $250 in "Research Costs for Jury Verdict Review.com."  Defendant argues that this cost should not be allowed "when Plaintiff ultimately accepted an offer significantly less than her previous position[.]"  (Doc. No. 20, Defs.' Mem. in Opp'n to Pl.'s Mot. for Att'y Fees and Costs ("Defs.' Mem.") 12.)  The Court considers this to be a frivolous objection

and will allow this cost. Defendants, in their zeal to question Plaintiff's costs, completely miss the obvious point that Mr. Barry's jury research may very well have led him to convince his client to accept the lower offer, thus saving the Defendants thousands of dollars, and this may have been, from Defendants' perspective, the best $250 spent in this case. The total costs allowed for Mr. Barry's firm are $287.99.

**V.     PROPORTIONALITY**

Defendants also argue that Plaintiff's attorneys' fees should be reduced because the amount of fees expended by Plaintiff far exceeded the degree of success in the lawsuit in that Plaintiff accepted an offer of judgment of $15,000. The fact that there is often a large disparity between the fees of plaintiffs' attorneys in successful FDCPA, Fair Credit Reporting Act ("FCRA"), or other statutory consumer-protection actions and the small amount of damages obtained for the plaintiff simply reflects the fact that Congress has chosen to level the playing field between consumers, who do not typically have the economic resources to pursue such claims, and defendants, who are well-equipped to thwart such consumer cases as a cost of a potentially lucrative debt-collection business. In discussing another consumer-protection law, the FCRA, which also has an attorneys' fees provision, the Fourth Circuit noted that:

> Since there will rarely be extensive damages in an FCRA action, requiring that attorney's fees be proportionate to the amount covered would discourage vigorous enforcement of the Act.

*Yohay v. City of Alexandria Employees Credit Union, Inc.*, 827 F.2d 967, 974 (4th Cir. 1987).

The Court observes that Defendants in this case provided the Court with a copy of *Bankey*, 2008 WL 2405773, (Clark Aff. ¶ 5, Attach. 2), in which this Court awarded the plaintiff a total of $28,770.50 in attorneys' fees and $4,859.90 in costs after Plaintiff accepted an offer of judgment of $2,500 for an FDCPA violation. Given the outcome in *Bankey*, this Court concludes that the award of attorneys' fees of $15,614.80 and costs of $1085.62 in this case, where Plaintiff accepted a judgment of $15,000 in her favor, need not be reduced on the basis of proportionality.

## VI.   CONCLUSION

The Court awards Plaintiff attorneys' fees of $15,614.80 (31.4 hours for Mr. Barry at $350 per hour plus 19.68 hours for Mr. Glover at $235 per hour). It also awards Plaintiff costs of $1,085.62 ($287.99 for Mr. Barry's costs and $797.63 for Mr. Glover's).

**JJK**